UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAURA E. ANNIS, PHYLLIS ANNIS, and
ROSS A. ANNIS,

        Plaintiffs,
 v.              **DECISION AND ORDER**
                    08-CV-458S
EASTERN ASSET MANAGEMENT, LLC,

        Defendant.

## I. INTRODUCTION

On June 20, 2008, Plaintiffs filed a complaint alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. Defendant failed to appear and defend this action, which resulted in the Clerk of the Court entering default on May 15, 2009. Presently before this Court is Plaintiffs' Motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.[1] For the following reasons, Plaintiffs' motion is granted.

## II. BACKGROUND

Plaintiffs Ross and Phyllis Annis are a married couple and the parents of Plaintiff Laura Annis. (Complaint, Docket No. 1, ¶¶ 5, 6.) Defendant Eastern Asset Management, LLC, is a "debt collector" within the meaning of the FDCPA. (Id. at ¶ 7.)

Laura incurred a debt to Clout Financial Services, which she defaulted on. (Id. at ¶¶ 11, 13.) Defendant purchased the debt in January 2008 and immediately began efforts

---

[1]The submissions relating to this motion are filed at docket numbers 8 and 15.

to collect it. (Id. at ¶¶ 14, 15.) Specifically, Defendant telephoned Laura almost every day for four months. (Id. at ¶ 15; Rutkowsky Affidavit,[2] Docket No. 15-5, ¶ 6.) Defendant also telephoned Ross and Phyllis almost every day for four months.[3] (Complaint at ¶ 16; Phyllis Annis Affidavit, Docket No. 15-6, ¶¶ 4, 5; Ross Annis Affidavit, Docket No. ¶¶ 4-5.)

In January 2008, Defendant left a message on Ross and Phyllis's answering machine stating that the call was from "The Law Offices of John Nicoli, Process Serving and Summons Division," and that court dates had been scheduled for Laura and a number had been assigned to her file. (Complaint at ¶¶ 18, 19.) The message concluded as follows: "Please make it a point to reach us as soon as possible. It's a very urgent matter." (Id. at ¶ 19.) In all subsequent calls to Ross and Phyllis, Defendant identified itself as "The Law Offices of Attorney John Nicoli." (Id. at ¶ 17.)

Ross called the telephone number left on his answering machine and spoke to a representative of Defendant. (Id. at ¶ 20.) Ross told the representative that Laura was his daughter. (Id. at ¶ 20.) The representative then told Ross that there was a case against Laura "with a request to file for a civil judgment against [Laura] in Queens County from a client of [Defendant's] regarding a breach of contract." (Id. at ¶ 20.) Defendant's representative discussed Laura's debt with Ross, despite knowing that it was not Ross's debt, and without obtaining permission from Laura to discuss her debt with a third party. (Id. at ¶ 21.) The representative also repeatedly referred to a "judgment" that would be filed against Laura if payment of the debt was not arranged. (Id. at ¶ 22.) The

---

[2] Subsequent to these events, Plaintiff Laura Annis married and changed her surname to Rutkowsky. (Rutkowsky Affidavit, ¶ 3.)

[3] Laura did not live with her parents. (Rutkowsky Affidavit, ¶ 4.)

2

representative then solicited payment of the debt by Ross with the following statements:

> • There was "a filing date of Thursday to forward this on for the preliminary paperwork to be issued;"
>
> • That Defendant was preparing "to ship the matter off to the County as of the 31st of [January];"
>
> • That the court dates Laura already "missed" would be "wiped out" if Ross would arrange to pay the debt;
>
> • That Defendant wanted to ensure that Laura would not miss any future court dates.

(Id. at ¶ 22.)

Defendant never filed a lawsuit against Laura after January 31, 2008, as the representative advised Ross it would. (Id. at ¶ 23.)

In February 2008, Defendant telephoned Laura on her cellular phone and left a message indicating that the call was from the "Process Serving and Summons Division at Attorney John Nicoli's Office," and that "as of February 20, 2008, we will be requesting a 'summons-complaint' subpoena be issued and served on [you], whether at your home or place of employment, whichever is more convenient for appropriate county authority out of Queens County." (Id. at ¶ 24.) The caller advised that to stop the legal action, Laura must immediately return the call. (Id. at ¶ 24.) The caller then stated:

> Basically, Laura, your failure to respond to this is going to result in you having to appear in Court, undergo a judgment filing. From that point forward, our client may take forcible recovery such as wage garnishment, lien filing against any property, or issuing a freeze against the use of any open checking or savings account until your legal obligation to this law firm has been resolved.

(Id. at ¶ 24.)

Defendant telephoned Laura twice more before February 20, 2008, leaving similar

messages threatening legal action and advising that the matter could be resolved only by an immediate return telephone call. (Id. at ¶¶ 25, 26.) But Defendant never initiated a lawsuit against Laura after February 20, 2008, as indicated in the previous messages. (Id. at ¶ 27.)

In March 2008, Defendant again telephoned Laura's cellular phone and left her a message. (Id. at ¶ 28.) This time the caller indicated that the call was from Eastern Asset Management and that she had been trying to contact Laura for the past 90 days. (Id. at ¶ 28.) The caller directed Laura to return the call or have her attorney return the call before March 21, 2008, to avoid having the case go to court. (Id. at ¶ 28.) Defendant made four more similar calls warning that action had to be taken before March 21, 2008. (Id. at ¶¶ 29, 30, 31, 32.) Defendant never filed a lawsuit against Laura on or after March 21, 2008. (Id. at ¶ 33.)

Defendant has continued to telephone each plaintiff, threatening to pursue legal action against Laura. (Id. at ¶ 35.)

## III. DISCUSSION

### A. Default Judgment Standard

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. See Fed. R. Civ. P. 55(a). Once default has been entered, the allegations of the Complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,

973 F.2d 155, 158 (2d Cir. 1992).

In considering whether to enter default judgment, the court must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment. See FED. R. CIV. P. 55(b)(2). Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). All reasonable inferences from the evidence presented are drawn in the moving party's favor. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

**B.** **Liability**

  **1.** **Claims under 15 U.S.C. §§ 1692b and 1692c (b)**

Section 1692b limits a debt collector's contact with third parties to acquiring location information. It further limits a debt collector's contact with individuals other than the consumer to one contact, except for certain circumstances. See 15 U.S.C. § 1692b (3). And except as provided in § 1692b, § 1692c (b) limits the individuals a debt collector may contact to the consumer, his attorney, a consumer reporting agency, the creditor, the creditor's attorney, and the debt collector's attorney.

Plaintiffs allege that Defendant violated 15 U.S.C. §§ 1692b and 1692c (b), by "failing to limit their telephone conversations with Plaintiff Ross Annis to obtaining location information for Plaintiff Laura Annis, and by repeatedly calling Plaintiff Ross Annis regarding collection of the subject debt." (Complaint, ¶ 38 (A).) Based on the undisputed

5

facts taken as true, this Court finds that Defendant violated 15 U.S.C. §§ 1692b and 1692c (b), as alleged.

### 2. Claims under 15 U.S.C. §§ 1692d, 1692d (2), and 1692d (5)

Section 1692d makes it generally unlawful for a debt collector to engage in any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." As a specific example, the statute prohibits the use of obscene, profane, or abusive language, see 15 U.S.C. § 1692d (2), and "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," 15 U.S.C. § 1692d (5).

Plaintiffs allege that Defendant violated 15 U.S.C. §§ 1692d, 1692d (2), and 1692d (5), by "repeatedly calling each of the Plaintiffs, engaging each in telephone conversations, and by using language the natural consequence of which was to abuse each of the Plaintiffs." (Complaint, ¶ 38 (B).) Based on the undisputed facts taken as true, this Court finds that Defendant violated 15 U.S.C. §§ 1692d and 1692d (5), as alleged. But because there is no allegation or evidence that Defendant used obscene, profane, or abusive language, this Court finds no violation of § 1692d (2).

### 3. Claims under 15 U.S.C. §§ 1692e, 1692e (2)(A), 1692e (4), 1692e (5), and 1692e (10)

Section 1692e prohibits debt collectors from using false, deceptive, or misleading representations to collect a debt. The statute provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application

of the foregoing, the following conduct is a violation of this section:

. . .

(2) The false representation of –

    (A) the character, amount, or legal status of any debt;

. . .

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action;

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken;

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Plaintiffs further allege that Defendant violated 15 U.S.C. §§ 1692e, 1692e (2)(A), 1692e (4), 1692e (5), and 1692e (10), by "falsely representing to each of the Plaintiffs the character and legal status of the subject debt and by threatening to take action that was not intended to be taken." (Complaint, ¶ 38 (C).) Based on the undisputed facts taken as true, this Court finds that Defendant violated 15 U.S.C. §§ 1692e, 1692e (2)(A), 1692e (4), 1692e (5), and 1692e (10), as alleged.

    **4.**    **Claims under 15 U.S.C. § 1692f**

Section 1692f prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect any debt. But the unfair or unconscionable conduct alleged must be in addition to the acts that a plaintiff alleges violate other sections of the FDCPA. See Foti, 424 F.Supp.2d at 667.

Plaintiffs allege that Defendant violated § 1692f, by "attempting to solicit payment of the subject debt from Plaintiff Ross Annis, despite Defendant's knowledge that they lacked Plaintiff Laura E. Annis's authorization to discuss payment arrangements with her father." (Complaint, ¶ 38 (D).) This is, however, essentially the same conduct that forms the basis of Plaintiffs' third-party-contact claims under 15 U.S.C. §§ 1692b and 1692c (b). This Court therefore finds no violation of § 1692f.

**C.    Damages**

**1.    Statutory Damages**

Section 1692k (a)(2)(A) authorizes up to $1,000 in statutory damages per plaintiff for any violation of the FDCPA. The specific amount of statutory damages, not to exceed $1,000, falls within the court's discretion. See Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998). Factors to be considered by the court in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance, the debt collector's resources, the number of individuals adversely affected, and the extent to which the debt collector's non-compliance was intentional. See 15 U.S.C. § 1692k (b)(1).

Here, each plaintiff requests the statutory maximum of $1,000 in damages. Because of Defendant's frequent and persistent calls (almost every day for four months); repeated and numerous violations of the FDCPA, including threats of litigation, threats to take unauthorized action, and improper third-party disclosure; targeting of not only the debtor, but her family; and the lack of evidence that Defendant's conduct was anything other than intentional; this Court finds that the statutory maximum award of $1,000 per

plaintiff is warranted.

### 2. Actual Damages

Section 1692k (a)(1) authorizes an award of "any actual damage sustained by [any] person as a result of [a defendant's violation of the FDCPA]." Actual damages are intended to compensate a plaintiff for "out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA." See Mostiller v. Chase Asset Recovery Corp., No. 09-CV-218A, 2010 WL 335023, at *3 (W.D.N.Y. Jan. 22, 2010) (quoting Milton v. Rosicki, Rosicki & Assocs., P.C., No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007).

In her affidavit, Plaintiff Laura Annis states that she took Defendant's threats to sue her very seriously and would often call her parents in tears out of concern for the consequences she thought she faced. (Rutkowski Affidavit, ¶ 7.) Moreover, she worried about the impact that her situation with Defendant would have on her upcoming wedding and marriage. (Id. at ¶ 7.) She was often unable to sleep and was constantly worried. (Id. at ¶ 7.) Further, Laura was particularly humiliated that her debt was disclosed to her parents, and she was upset that Defendant targeted her parents as well. (Id. at ¶ 8.) Phyllis attests that Laura would call her in tears after receiving calls from Defendant, and Ross would sometimes have to leave work to go calm Laura. (Phyllis Annis Affidavit, ¶ 7.) Laura maintains that she suffered emotional distress, upset, embarrassment, and humiliation. (Rutkowski Affidavit, ¶ 9.) Laura seeks $5,000 in actual damages.

Phyllis claims that she too took Defendant's threats very seriously and spent many hours discussing them. (Phyllis Annis Affidavit, ¶¶ 6, 8.) She worried about the effect

9

Defendant's conduct was having on Laura, and was concerned that it might impact Laura's relationship with her boyfriend. (Id. at ¶ 9.) Phyllis maintains that she lost sleep, worried about Laura's mental state, and suffered a deterioration in the stability of her relationship with her husband. (Id. at ¶ 10.) Phyllis also claims to have suffered emotional distress, upset, embarrassment, and humiliation. (Id. at ¶ 11.) Phyllis seeks $3,000 in actual damages.

Ross claims that Defendant's conduct upset his wife and daughter to such a degree that he had to calm and reassure them, which he was sometimes unable to do. (Ross Annis Affidavit, ¶¶ 6, 7.) Ross was often unable to sleep and required sleep medication as a result. (Id. at ¶ 6.) Defendant's conduct became the primary topic of conversation in Ross's house, which had a deteriorating effect on his relationship with his wife. (Id. at ¶ 8.) Like Laura and Phyllis, Ross also worried about the effect Defendant's threats would have on Laura's relationship with her boyfriend. (Id. at ¶ 9.) Ross claims that he lost sleep, worried about Laura's mental state, and suffered a deterioration in the stability of his relationship with Phyllis. (Id. at ¶ 10.) Ross also claims to have suffered emotional distress, upset, embarrassment, and humiliation. (Id. at ¶ 11.) Ross seeks $3,000 in actual damages.

None of the Plaintiffs have submitted medical evidence in support of their claims of emotional distress or, in Ross's case, the need to take prescription sleep medication. The stress-inducing effect of Defendant's conduct does not appear to this Court to be unduly overstated or exaggerated. Although the possible negative effect on Laura's relationship with her boyfriend (now her husband) seems somewhat attenuated, the degree of distress and humiliation described in Plaintiffs' affidavits strikes this Court as consistent with

10

receiving daily calls over a four-month period threatening legal action and wage garnishment. In Laura's case, it is also consistent with the unauthorized disclosure of her debt to her parents and the harassment experienced by Ross and Phyllis, which Laura no doubt felt responsible for. Nonetheless, Plaintiffs' damages claim is excessive. This Court finds that actual damages of $3,500 for Laura, and $1,500 each for Ross and Phyllis, is appropriate compensation.

**D.    Attorney's Fees and Costs**

The FDCPA provides for the recovery of reasonable attorney's fees and costs by successful litigants. See 15 U.S.C. § 1692k (a)(3) (permitting recovery of, "in the case of any successful motion to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court").

In Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,[4] the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time" in the circuit and district courts. Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). In particular, the court sought to reconcile the "lodestar" method of determining fees (the product of the attorney's usual hourly rate and the number of hours billed, subject to adjustment based on case-specific considerations to arrive at a "reasonable fee"), with the method developed in Johnson v. Georgia Highway Express, Inc.[5] (which considered twelve specific factors to arrive at the "reasonable fee"). Arbor Hill, 493 F.3d at 114. "Relying on the substance of both

---

[4] 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by*, 522 F.3d 182 (2d Cir. 2008).

[5] 488 F.2d 714 (5th Cir. 1974).

11

approaches, [the Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'" Simmons, 575 F.3d at 174.

District courts now are directed to set a reasonable hourly rate, bearing in mind all the case-specific variables the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate to calculate a "presumptively reasonable fee." Arbor Hill, 493 F.3d at 117.

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotations omitted). After Arbor Hill, the presumptively reasonable fee is "what a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively." 493 F.3d at 112, 118.

To arrive at that fee, district courts must also consider the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

Finally, a district court must consider that a client may be able to negotiate with his or her attorneys, based on their desire for the reputational benefits that could accrue from

association with the case. Arbor Hill, 493 F.3d 119.

This method of reasonable fee calculation has been used in this district to determine appropriate fees in FDCPA cases. See, e.g., Mostiller, 2010 WL 335023, at *4-*5; Estay v. Moren and Woods LLC, No. 09-CV-620A, 2009 WL 5171881, at *3-*4 (W.D.N.Y. Dec. 22, 2009); Dayton v. Northeast Fin. Solutions, NO. 09-CV-549A, 2009 WL 4571819, at *3 (W.D.N.Y. Dec. 7, 2009).

Here, Plaintiffs' counsel have submitted affidavits and detailed time records supporting the claim for attorney's fees and costs. Attorney Kenneth Hiller claims 17.2 hours at $215 per hour; Attorney Amanda Jordan claims 1.4 hours at $175 per hour; Attorney Kimberly Irving claims 1.7 hours at $200 per hour. (Hiller Affidavit, Docket No. 15-2, ¶¶ 3, 5; Jordan Affidavit, Docket No. 15-3, ¶¶ 9, 11; Irving Affidavit, Docket No. 15-4, ¶¶ 4, 6.) Plaintiffs also seek recovery of the $350 filing and $60 process-service fees. (Hiller Affidavit, ¶ 6.)

The time expended for prosecution of this case appears reasonable. Hourly rates of $215 for Hiller and $175 for Jordan have been approved in this district as reasonable hourly rates for counsel of their experience. See Mostiller, 2010 WL 335023, at *5; Miller v. Midpoint Resolution Group, LLC, 608 F.Supp.2d 389, 395 (W.D.N.Y. 2009.) Little information is provided about Irving's experience and expertise, other than that she was admitted to the bar in 1995 and started handling FDCPA cases in 2009. (Irving Affidavit, ¶¶ 2, 3.) This Court therefore finds that she should be compensated at a rate on par with Jordan, who is a newer attorney but appears to have more FDCPA experience. Irving's rate will therefore be $175.

Accordingly, this Court awards $3,698 for Hiller's 17.2 hours at $215 per hour, $245

for Jordan's 1.4 hours at $175 per hour, and $297.50 for Irving's 1.7 hours at $175 per hour, for a total fee award of $4,240.50. This Court finds $4,240.50 to be a presumptively reasonable fee given the facts and circumstances of this case. Further, this Court finds reimbursement of the $350 filing and $60 process-service fees to be proper.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is granted. Plaintiffs are awarded $3,000 in statutory damages, $6,500 in actual damages, $4,240.50 in attorney's fees, and $410 in costs, for a total award of $14,150.50.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Default Judgment (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of the Court is directed to enter judgment in favor of Plaintiffs against Defendant in the amount of $14,150.50, with apportionment consistent with the foregoing decision.

FURTHER, that the Clerk of the Court shall close this case upon entry of judgment.

SO ORDERED.

Dated:     March 16, 2010
           Buffalo, New York

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                                   Chief Judge
                           United States District Judge